**Joshua L. Ross**, OSB No. 034387
Email: jross@stollberne.com
**Cody Berne**, OSB No. 142797
Email: cberne@stollberne.com
STOLL STOLL BERNE LOKTING
& SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:     (503) 227-1600
Facsimile:     (503) 227-6840

**Nicholas A Kahl**, OSB No. 101145
Email: nick@nickkahl.com
NICK KAHL, LLC
209 SW Oak Street, Suite 400
Portland, OR 97204
Telephone:     (971) 634-0829
Facsimile:     (503) 227-6840

**Attorneys for Plaintiff**

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| BRIAN ROLLINS, individually, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br>   v. <br><br> WINK LABS, INC., a Delaware corporation; and i.am.plus ELECTRONICS, INC., a Delaware corporation, <br><br> Defendants. | Case No. 3:20-cv-01220 <br><br><br> **CLASS ACTION ALLEGATION COMPLAINT** <br><br><br> DEMAND FOR JURY TRIAL |

Plaintiff Brian Rollins ("Plaintiff"), on behalf of himself and all others similarly situated, by his undersigned counsel, alleges the following upon personal knowledge as to his own acts, and upon information and belief as to all other matters. Plaintiff's information and belief are based upon an investigation conducted by counsel.

## INTRODUCTION

1.       Wink and i.am.plus used bait and switch marketing, sales, and business practices to profit at the expense of Plaintiff and the Class.

2.       Defendants Wink Labs, Inc. ("Wink") and i.am.plus Electronics Inc. ("i.am.plus") (collectively "Defendants") illegally required and imposed monthly subscription fees to connect, access, control, and use smart devices they sold to Plaintiff and the proposed Class in violation of representations and promises made by Defendants that there would be no monthly fee or subscription fee to connect, access, control, and use the devices.

## THE PARTIES

3.       At all material times, Plaintiff was a citizen and resident of Oregon.

4.       Wink is a Delaware corporation with its headquarters in New York, New York.

5.       i.am.plus is a Delaware corporation with its headquarters in Los Angeles, California. i.am.plus is the parent corporation of Wink.

## JURISDICTION AND VENUE

6.       The Court has personal jurisdiction over Defendants because they advertised, marketed, sold, and distributed the Wink Hub and other Wink devices in Oregon to Oregon consumers, including the Wink Hub purchased by Plaintiff in Oregon.

7.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in

Page 1 - CLASS ACTION ALLEGATION COMPLAINT

controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the proposed Class are citizens of different states than Defendants. See 28 U.S.C. § 1332(d)(2)(A). This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

8.　　Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in the District of Oregon, Defendants conducted substantial business here, solicited substantial business here, and made representations and promises here.

## FACTS

9.　　Wink produces and sells software and hardware that enable purchasers to connect, access, control, and use smart home devices and home automation devices from a consolidated user interface.

10.　　On or about October 11, 2015, Plaintiff purchased a Wink Hub for $49.99 at the Home Depot located at 14800 SW Sequoia Parkway, Tigard, OR 97223.

11.　　Plaintiff used his Wink Hub in Oregon.

12.　　The Wink Hub is an electronic, computerized hub that a purchaser can use to connect, access, control, and use smart home devices.

13.　　As of July 2020, the Wink Hub is listed for sale on Wink's website (https://www.wink.com/products/) for $69.00, and the Wink Hub 2 is listed for sale on the same website for $99.00.

14.　　Wink sold the Wink Hub as a standalone product and as part of packages of Wink devices, including smart home monitoring kits, smart electric outlets, smart plugs, smart switches, smart dimmers, smart leak detectors, and smart devices to control appliances.

Page 2 - CLASS ACTION ALLEGATION COMPLAINT

15.    Since 2014, Wink has grown to support more than 4 million connected devices.

16.    The Wink Hub and other Wink devices and software are advertised, marketed, produced, and sold by Wink.

17.    Wink marketed the Wink Hub and the Wink Hub 2 (collectively "Wink Hub") as an automation platform that a purchaser could use to control smart devices in his or her home.

18.    Wink advertised and marketed the Wink Hub and other Wink devices online, on packaging, and in other public statements as not having monthly fees, subscription fees, or requiring an ongoing contract or any other user fee.

19.    The lack of a subscription fee, ongoing contract, or user fee distinguished the Wink Hub and other devices from products sold by competitors that required a monthly fee, subscription fee, ongoing contract, or other user fee.

20.    Wink provided a page of "frequently asked questions" on its public website during the class period.  The "frequently asked questions" explained, "There are no contracts or monthly fees."  Wink represented and promised that customers would pay only a fixed price to use the Wink Hub for its intended purpose, and customers would not ever pay any contract, subscription, or monthly fee to use the Wink Hub for its intended purpose.

21.    At all material times, Wink represented and promised that upon purchasing a Wink Hub or other Wink devices, the purchaser would not be required to pay for a subscription, monthly fee, contract fee, or other user fee to connect, access, control, and use the Wink Hub and Wink devices.

22.    On May 6, 2020, Wink sent customers an email with the subject line, "Introducing Wink Subscription."  Wink wrote, "We are transitioning to a subscription service."  Wink posted the same information on its blog.

Page 3 - CLASS ACTION ALLEGATION COMPLAINT

23.     Wink explained in the May 6, 2020 email that customers would have to pay a monthly subscription fee of $4.99, starting on May 13, 2020.  Wink wrote, "We have a lot of great ideas on how to expand on Wink's capabilities and satisfy the many requests from our user base. In order to provide for development and continued growth, we are transitioning to a $4.99 monthly subscription, starting on May 13, 2020. This fee is designed to be as modest as possible. Your support will enable us to continue providing you with the functionality that you've come to rely on, and focus on accelerating new integrations and app features."

24.     The May 6, 2020 email went on to explain that if customers did not pay the new monthly subscription fee, they would no longer have access to the Wink Hub.

25.     On May 12, 2020, Wink sent customers an email with the subject line, "Subscription Deadline Extended to May 20."  Wink explained in that email that it was extending the deadline by which customers had to start paying for a subscription to May 20, 2020.

26.     On May 20, 2020, Wink emailed its customers and posted on its blog that it was again delaying the subscription requirement and that Wink would notify customers before charging for a subscription.

27.     On July 8, 2020, Wink emailed its customers and posted on its blog that it would begin charging a subscription on July 27, 2020.  Wink wrote in the email and on the blog, "Please know that we have adjusted our timelines since our initial announcement on May 6th to allow users more opportunity to make considerations. We were able to extend our service so that subscriptions will now begin on Monday, July 27th, 2020."  Wink also wrote that after the subscription requirement, "Users who do not sign up will still have access to limited

Page 4 - CLASS ACTION ALLEGATION COMPLAINT

functionality without being charged.  This will specifically allow for local control over select devices, such as those found in the Lights + Power menu, as well as Z-Wave connected Locks."

28.    Under the heading "Will I be able to access my devices if I don't subscribe?," Wink explained on its website, "If you don't subscribe you will only have access to local control from the Wink app for switches, lights, and locks that are already connected directly to your hub. You will not be able to control your devices when you are not on your local WiFi network, use Alexa or Google Home or any API devices.

29.    Customers who purchased a Wink hub and other devices, and who do not pay the subscription fee, will no longer be able to connect, access, control, and use the Wink Hub and other Wink devices as the customers have before, thereby rendering their Wink Hub and other Wink devices worthless or worth less.

30.    On July 27, 2020, Defendants disabled the Wink Hub and Wink devices for customers who had not paid the subscription fee.  Customers who had not paid the subscription fee lost the ability to access, control, and use their Wink Hub and Wink devices as the customers have before, rendering the Wink Hub and Wink devices worthless or worth less.

31.    Simply put, Wink's conduct is contrary to its prior representations and promises that there was and would be no monthly fee, subscription fee, or ongoing contract, and that use of the Wink Hub and Wink devices was free.

32.    On information and belief, i.am.plus purchased Wink in 2017.

33.    On information and belief, Wink acted as i.am.plus' agent in advertising, marketing, producing, and selling the Wink Hub and other Wink devices, imposing a subscription fee, and in disabling devices and features for consumers who did not pay the subscription fee.

Page 5 - CLASS ACTION ALLEGATION COMPLAINT

34.    On information and belief, i.am.plus authorized and ratified Wink's advertising, marketing, producing, and selling the Wink Hub and other Wink devices, imposing a subscription fee, and disabling devices and features for consumers who did not pay the subscription fee.

35.    i.am.plus' website advertised, marketed, and linked to Wink.

36.    On information and belief, i.am.plus knowingly accepted the benefits of Wink's sales of the Wink Hub and other Wink devices, the imposition of a subscription fee, and disabling of devices and features for consumers who did not pay the subscription fee.

37.    Defendants are jointly and severally liable to Plaintiff and each member of the Class.

## CLASS ACTION ALLEGATIONS

38.    Plaintiff brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all members of the following proposed class (the "Class" or "Class Members"):

**All persons who purchased a Wink Hub or other Wink device in Oregon, before July 27, 2020, and from whom Defendants now require payment of a user fee in order to access full functionality of any such device.**

39.    Excluded from the proposed Class are Defendants, any entity in which Defendants have a controlling interest or that has a controlling interest in (or is under common control with) Defendants, and Defendants' legal representatives, assignees, and successors.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

Page 6 - CLASS ACTION ALLEGATION COMPLAINT

40.    The proposed Class meets all of the criteria required by Federal Rule of Civil Procedure 23(a).

41.    **Numerosity:**  The proposed Class is so numerous that joinder of all members is impracticable.  Upon information and belief, the proposed Class has more than 100 members.

42.    **Commonality:**  There are many questions of law and fact common to Plaintiff and the Class.  These common questions of law and fact include, but are not limited to:

a.    Whether Defendants advertised, marketed, and sold the Wink Hub and other devices as not having monthly or subscription fees and not requiring an ongoing contract;

b.    Whether Defendants misrepresented that Plaintiff and Class Members would not have to pay a subscription fee, monthly fee, contract fee, or user fee in order for the Wink Hub or other Wink devices to operate;

c.    Whether Defendants disabled access to the Wink Hub and other Wink devices and features for customers who did not pay a subscription fee;

d.    Whether Defendants violated Oregon's Unlawful Trade Practices Act;

e.    Whether Defendants made false or misleading representations of fact concerning the offering price of, or Plaintiff's and Class Members' cost for goods or services;

f.    Whether Defendants were unjustly enriched as a result of the practices complained of herein;

g.    Whether Plaintiff and the Class are entitled to statutory damages, other damages, attorney fees and costs, restitution, or other monetary or equitable relief, and if so, the methodology of determining such relief.

Page 7 - CLASS ACTION ALLEGATION COMPLAINT

43.    Common sources of evidence may be used to demonstrate Defendants' unlawful conduct on a class-wide basis, including but not limited to documents and testimony about Defendants' product packaging, communications with customers, promises and representations, public statements, advertising, marketing, and other media, and Defendants' records of sales and transactions.

44.    **Typicality:**  Plaintiff's claims are typical of the claims of the proposed Class. Plaintiff's claims and claims of the proposed Class arise out of the same common course of conduct by Defendants and are based on the same legal, equitable, and remedial theories. Plaintiff has no interests adverse to the interests of the proposed Class.

45.    **Adequacy:**  Plaintiff fairly and adequately protects the interests of the proposed Class.  Plaintiff has retained competent and capable attorneys with experience in complex and class action litigation.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the proposed Class and have the financial resources to do so.  Neither Plaintiff nor his counsel have interests that are contrary to or that conflict with those of the proposed Class.

46.    Defendants have engaged in a common course of conduct toward Plaintiff and the proposed Class.  The common issues arising from this conduct that affect Plaintiff and Class Members predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

47.    The proposed Class also satisfies the criteria for certification under Federal Rule of Civil Procedure 23(b) and 23(c).  Among other things, prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants;

Page 8 - CLASS ACTION ALLEGATION COMPLAINT

prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; questions of law or fact common to the proposed Class predominate over any questions affecting only individual members; and class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy which is the subject of this action.

48.    One or more subclasses or issues may be appropriate for certification under Federal Rule of Civil Procedure 23(c).  Plaintiff reserves the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

49.    The interests of judicial economy will be served by concentrating litigation concerning these claims in this Court.  The management of the proposed Class will not be difficult.

50.    Plaintiff and other members of the proposed Class have suffered damages as a result of Defendants' unlawful and wrongful conduct.  Absent a class action, Defendants will retain substantial funds received as a result of their wrongdoing, and such unlawful and improper conduct shall, in large measure, not go remedied.  Absent a class action, the members of the proposed Class will not be able to effectively litigate these claims and will suffer further losses, as Defendants will be allowed to continue such conduct with impunity and retain the proceeds of their ill-gotten gains.

51.    A class action is the superior method for the fair and efficient adjudication of this controversy.  Class-wide relief is essential to compel Defendants to comply with their legal obligations.  The interest of individual members of the proposed Class in individually controlling

Page 9 - CLASS ACTION ALLEGATION COMPLAINT

the prosecution of separate claims against Defendants is small because the damages and other remedies available in an individual action against Defendants for failing to comply with their obligations under the law are relatively small.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

**FIRST CAUSE OF ACTION**
**(Unlawful Trade Practices Act - ORS 646.605 *et seq.*)**

52.    Plaintiff repeats and realleges the allegations of paragraphs 1 to 51 above as if fully set forth in this paragraph.

53.    Wink and i.am.plus are each a "Person" as defined in ORS 646.605(4).

54.    The Wink Hub and other Wink devices are goods or services as defined by ORS 646.605(6)(a), because the Wink Hub and other Wink devices are or may be obtained primarily for personal, family, or household uses.

55.    Plaintiff and the proposed Class suffered an ascertainable loss of money or property under ORS 646.638.

56.    Plaintiff and the proposed Class seek all rights, damages, and legal and equitable relief available under ORS 646.605 *et seq.*, including ORS 646.636 and ORS 646.638, and as otherwise available under statute, rule, or common law, including maintenance of a class action, statutory damages, actual damages, other legal and equitable relief, punitive damages, costs, pre and post judgment interest, and attorney fees.

57.    Defendants are liable to Plaintiff and the Class as set forth herein together with interest from the date of loss.

Page 10 - CLASS ACTION ALLEGATION COMPLAINT

58.    Defendants represented and promised Plaintiff and Class Members that there was no subscription fee, contract fee, monthly fee, or user fee.  However, beginning July 27, 2020, Defendants required Plaintiff and Class Members to pay a subscription fee or Plaintiff and Class Members would lose access to the Wink Hub and other Wink devices and features, and the Wink Hub and other Wink devices would be rendered useless or be worth less by nonpayment of the subscription fee.

59.    Under ORS 646.638(3), Plaintiff and the proposed Class are entitled to recover their reasonable attorney fees from Defendants for Defendants' violations of Oregon law as detailed herein.

60.    Plaintiff and the proposed Class seek recovery of punitive damages from Defendants because Defendants' conduct was reprehensible.  Defendants inflicted economic injury upon Plaintiff and the proposed Class in an intentional manner.  And, Defendants utilized their singular control over Wink's associated products and services to extort monthly fees and subscriptions from Plaintiff and Class Members to which Defendants are not entitled.

### Count 1: Willful Violations of Oregon Law

61.    Plaintiff and the other members of the proposed Class suffered an ascertainable loss of money or property as a result of Defendants' willful use or employment of one or more of the following unlawful trade practices:

      a.    Defendants represented that goods or services had characteristics, uses, benefits, or qualities that the goods or services do not have.  ORS 646.608(1)(e).

Page 11 - CLASS ACTION ALLEGATION COMPLAINT

b.    Defendants represented that goods or services were of a particular standard, quality, style, or model when the goods or services were of another.  ORS 646.608(1)(g).

c.    Defendants advertised goods or services with intent not to provide the goods or services as advertised.  ORS 646.608(1)(i).

d.    Defendants made false or misleading representations of fact concerning the offering price of or the cost for goods or services.  ORS 646.608(1)(s).

e.    Defendants promised to deliver goods or services within a certain period of time with intent not to deliver the goods or services as promised.  ORS 646.608(1)(q).

**Count 2: Reckless or Knowing Violations of Oregon Law**

62.    Plaintiff and the other members of the proposed Class suffered an ascertainable loss of money or property as a result of Defendants' reckless or knowing use or employment of one or more of the following unlawful trade practices:

a.    Defendants represented that goods or services had characteristics, uses, benefits, or qualities that the goods or services do not have.  ORS 646.608(1)(e).

b.    Defendants represented that goods or services were of a particular standard, quality, style, or model when the goods or services were of another.  ORS 646.608(1)(g).

c.    Defendants advertised goods or services with intent not to provide the goods or services as advertised.  ORS 646.608(1)(i).

Page 12 - CLASS ACTION ALLEGATION COMPLAINT

d.    Defendants made false or misleading representations of fact concerning the offering price of or the cost for goods or services.  ORS 646.608(1)(s).

e.    Defendants promised to deliver goods or services within a certain period of time with intent not to deliver the goods or services as promised.  ORS 646.608(1)(q).

**SECOND CAUSE OF ACTION**

**(Unjust Enrichment)**

63.    Plaintiff repeats and realleges the allegations of paragraphs 1 to 62 above as if fully set forth in this paragraph.

64.    As described above, Plaintiff and the other members of the proposed Class conferred benefits upon Defendants through their payments for the Wink Hub and other Wink devices and for Defendants' representations and promises of subscription-free connection, access, control, and use of the Wink Hub and other Wink devices and features.

65.    Defendants have been unjustly enriched by their wrongful conduct at the expense and to the detriment of Plaintiff and the other members of the proposed Class.

66.    Defendants were aware that they had received the benefits of their wrongfully obtained sales of the Wink Hub and other Wink Devices and subscription fees.

67.    Defendants have been unjustly enriched by collecting the price paid for the Wink Hub and other Wink devices after representing and promising to Plaintiff and the other members of the proposed Class that there would be no contract fee, monthly fee, subscription fee, or user fee, only for Defendants to require payment of a subscription fee.

68.    Defendants have been unjustly enriched by requiring and collecting subscription fees to connect, access, control, and use the Wink Hub and other Wink devices.

Page 13 - CLASS ACTION ALLEGATION COMPLAINT

69.     Defendants used the threat of disabling access to the Wink Hub and other Wink devices to attempt to force Plaintiff and Class Members to pay a subscription fee.

70.     It would be inequitable and unconscionable for Defendants to enjoy the benefit of their wrongful conduct.

71.     Plaintiff and the other members of the proposed Class are entitled to recover any and all amounts proven to have enriched Defendants arising from Defendants' wrongful conduct, including the price paid for the Wink Hub and other Wink devices, subscription fees, pre and post judgment interest, restitution, and disgorgement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests of this Court the following prayer for relief, on behalf of himself and each Class Member:

A.     An order certifying an appropriate Class pursuant to Federal Rule of Civil Procedure 23 and any additional subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing Plaintiff's counsel as Class counsel;

B.     An award of damages in an amount to be determined at trial;

C.     An award of statutory damages of $200 for each violation of the Unlawful Trade Practices Act, ORS 646.605 *et seq*.;

D.     Restitution and disgorgement of amounts unlawfully charged, received, and retained by Defendants;

E.     Pre-judgment interest;

F.     Post-judgment interest;

G.     Attorneys' fees, costs, disbursements, and expenses of suit, including expert witness fees;

Page 14 - CLASS ACTION ALLEGATION COMPLAINT

H.      Punitive damages; and

I.       Such other relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury on all matters

so triable.

DATED this 27 day of July, 2020.

STOLL STOLL BERNE LOKTING
& SHLACHTER P.C.


By: s/Cody Berne
    **Joshua L. Ross**, OSB No. 034387
    **Cody Berne**, OSB No. 142797

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:  (503) 227-1600
Email:        jross@stollberne.com
              cberne@stollberne.com

-AND-

**Nicholas A. Kahl**, OSB No. 101145
NICK KAHL LLC
209 SW Oak Street, Suite 400
Portland, OR 97204
Telephone:  (971) 634-0829
Email:        nick@nickkahl.com

**Attorneys for Plaintiff**

Page 15 - CLASS ACTION ALLEGATION COMPLAINT